JOSEPH A. WALSH II, SBN. 143694
joe.walsh@cwn-law.com
COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone: (562) 317-3300
Facsimile: (562) 317-3399

JONATHAN W. HUGHES SBN. 186829
jonathan.hughes@arnoldporter.com
ARNOLD & PORTER KAYE
SCHOLER LLP
Three Embarcadero Center, Tenth Floor
San Francisco, CA 94111
Telephone: (415) 471-3156
Facsimile: (415) 471-3400

Attorneys for DORDELLAS FINANCE
CORP., MSC MEDITERRANEAN
SHIPPING COMPANY S.A.,
MEDITERANEAN SHIPING
COMPANY S.R.L., and MSC DANIT
(collectively "Dordellas Parties")

(*additional counsel on signature page*)

ALBERT E. PEACOCK III, SBN. 134094
apeacock@peacockpiper.com
PEACOCK PIPER TONG + VOSS LLP
100 W. Broadway, Suite 610
Long Beach, CA  90802
Telephone:  (562) 320-8880
Facsimile:  (562) 735-3950

KEVIN J. ORSINI (*Pro Hac Vice*)
korsini@cravath.com
CRAVATH SWAINE AND MOORE LLP
825 Eighth Avenue
New York, NY 10019-7475
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Attorneys for COSTAMARE SHIPPING
CO., S.A., CAPETANISSA MARITIME
CORPORATION, V.SHIPS GREECE
LTD., and the M/V BEIJING (erroneously
sued as the M/V COSCO BEIJING),
in rem (collectively "BEIJING Parties")

(*additional counsel on signature page*)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, Jr., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORP., et. al.,<br><br>Defendants/Third-Party Plaintiffs,<br><br>v. | CASE NO. SA 21-CV-1628-DOC-JDE<br><br>CASE NO. 2:22-cv-02153-DOC-JDE<br><br>**SEPTEMBER 14, 2022 JOINT STATUS REPORT BY DORDELLAS AND BEIJING PARTIES**<br><br>Via Electronic Filing and Email to SMP |

|     |
| --- |
| MEDITERRANEAN SHIPPING COMPANY, S.A., et al., |
| Defendants/Third-Party Defendants. |
| In the Matter of the Complaint of DORDELLAS FINANCE CORP., et al., |
| Plaintiffs. |

The Dordellas Parties and BEIJING Parties submit this joint status report to the Special Master Panel pursuant to the Court's September 8, 2022, Order (*Gutierrez*, ECF No. 401) and in response to the Class Plaintiffs and Amplify's September 12, 2022 joint status report (*Gutierrez*, ECF No. 412).

## I.   STATUS OF DISCOVERY

### A.   Status of Amplify Parties' Discovery

Amplify repeatedly has claimed that it has produced almost 300,000 documents (*see, e.g., Gutierrez*, ECF No. 390 (Status Report) at 11), more than 260,000 of which consist of a data dump of system files from Amplify's "Unified Command Data" Microsoft Teams site, which Amplify admits it never reviewed for responsiveness.[1]  Thus, in the more than ten months that Amplify has been participating in discovery, Amplify has managed to produce approximately 30,000 documents (a rate of 3,000 documents per month) that were reviewed and collected pursuant to its discovery negotiations with Class Plaintiffs.  Some of the key

---

[1] Amplify also produced all 263,160 documents in this production without the metadata load files that would connect each, unique document to the associated metadata.  Instead, Amplify has provided an Excel spreadsheet consisting of hundreds of thousands of rows to be used as a cross reference for the metadata, hobbling the BEIJING and Dordellas parties from analyzing this information.

documents that the BEIJING and Dordellas Parties require to litigate their claims against Amplify have yet to be produced.

*First*, Amplify has not produced documents from the criminal investigations against it, despite such documents being plainly relevant to this case.  Amplify pled guilty or "no contest" to a total of seven counts of criminal charges brought by the United States Department of Justice and the California Attorney General.  The statements of fact attached to each plea agreement detail Amplify's employees' relevant conduct on October 1 and October 2, 2021 including:  their decision to continue to pump oil through the Pipeline after seven separate alarms sounded from Amplify's leak detection system (only shutting operations after the eighth alarm), from 4:05 p.m. on October 1 until 6:04 a.m. on October 2; their decision to continue to pump oil through the Pipeline after determining around 1:20 a.m. on October 2 that 10 more barrels of oil were being pumped out of Platform Elly than were arriving onshore; their lack of experience in conducting "line rides" to visually inspect the Pipeline and surrounding area; and their knowledge that conducting a "line ride" in the middle of the night with a flashlight would be inadequate.  Given the centrality of these facts to the BEIJING and Dordellas Parties' claims and defenses, the BEIJING and Dordellas Parties have sought assurances from Amplify that it will preserve all documents relating to the state and federal criminal investigations.  Further, the BEIJING and Dordellas Parties have requested that Amplify produce any documents exchanged with the federal and state prosecutors relating to Amplify's guilty plea, including but not limited to any presentations, white papers or other documents prepared by Amplify's counsel that were provided or shown to the prosecutors relating to Amplify's conduct, or other documents shown or exchanged by Amplify's counsel with prosecutors, including drafts of the plea agreements and the statements of factual basis.  Amplify has not acknowledged or otherwise responded to either request.  Instead, in response to related requests for production served by the Dordellas Parties, Amplify responded that protective

orders prevent Amplify from producing certain documents from its criminal cases to the Parties in these civil actions. Protective orders cannot prevent Amplify from producing *its own documents* to the BEIJING and Dordellas Parties, and in any event Amplify can move to modify the protective order to comply with its discovery obligations.

*Second*, Amplify has omitted documents from the date of the oil spill from its production. Amplify has produced zero emails sent on October 1, 2021 and only nine documents dated October 1, 2021. Amplify has produced only two emails sent on October 2, 2021 and only 40 documents dated October 2, 2021. Amplify's total failure to produce documents from the date of the incident at issue here demonstrates a fundamental error in Amplify's document collection and review protocol, or a strategic decision on Amplify's part to delay production of these documents, which surely it has known constitute responsive discovery material for the entirety of the ten-month period that it has been engaged in Discovery.

*Third*, Amplify similarly has declined to produce discovery into the other key event relevant to this litigation: the heavy wind event on January 25, 2021. On September 7, the BEIJING Parties asked Amplify to provide them with the names of the employees working on their platforms or shoreside facilities from January 23–January 26, 2021; during a meet and confer that same day, Amplify declined to respond, or to commit to a timeline for its response. In a September 14, 2022 email, Amplify flatly refused to provide the names, stating in an email that, "The identity of the Control Room Operators on Elly -- and the identity of the Platform Superintendent -- during the requested windows are reflected in documents we have produced." (09.14.2022 Email from M. Thompson to L. Grossbard.) On the Parties' September 14, 2022 meet and confer call, Amplify's counsel also stated that it would not provide information concerning its employees and supervision structure in order to help assess whether all relevant custodians had been identified because its view is that custodians have already been negotiated.

*Fourth*, Amplify has not provided the BEIJING and Dordellas Parties with information that is critical to their ability to understand the scope of what Amplify has and has not produced, including its discovery correspondence describing how the 177 RFPs served on it by Class Plaintiffs were interpreted or narrowed; letters and emails transmitting its document productions (which typically describe the productions) and its privilege logs.  In a September 14, 2022 email, Amplify agreed to provide its production emails and any other "material email threads regarding [ ] negotiations" (*id.*), but has refused to commit to a date for their production.

Despite the fact that Amplify has been the subject of civil and criminal actions and investigations for nearly a year, and has pled guilty to multiple crimes, Amplify has reviewed and produced a set of approximately 30,000 documents that omits key information necessary to assess its conduct in January and October 2021. Given these deficiencies, the BEIJING and Dordellas Parties ask that the SMP impose the following orders on Amplify:

- Order requiring Amplify to produce any documents exchanged with the federal and state prosecutors relating to Amplify's guilty plea, including but not limited to any presentations, white papers or other documents prepared by Amplify's counsel that were provided or shown to the prosecutors relating to Amplify's conduct, or other documents shown or exchanged by Amplify's counsel with prosecutors, including drafts of the plea agreements and the statements of factual basis, by Monday, September 19, and to confirm by the same date that it is preserving all documents relating to the state and federal criminal investigations.
- Order requiring Amplify to produce all non-privileged custodial documents dated October 1 or October 2, 2021 that hit on its search terms by September 26.
- Order requiring Amplify to identify the names of its employees on the Elly, Ellen and Eureka platforms, its employees operating the shoreside

facilities, and any other employees at offices elsewhere with whom the platform and shoreside employees would have been in contact from January 23–26, 2021, by Monday, September 19.

- Order requiring Amplify to meet and confer with the BEIJING and Dordellas Parties the week of September 19 to respond to questions regarding employees involved in the operations and oversight of Amplify's platforms, shoreside and related offsite locations so that they can ensure employees likely to have relevant, responsive information have been identified and included as custodians.

- Order requiring Amplify to confirm the produced, June 2011 Draft Control Room Manual was the operative manual in October 2021, or to produce the updated version that was in fact operative, by Monday, September 19.

- Order requiring Amplify to provide discovery correspondence, production cover letters, production transmittal emails, and privilege logs to the BEIJING and Dordellas Parties by Monday, September 19.

- Order requiring Amplify to meet and confer with the BEIJING and Dordellas Parties the week of September 19 regarding which categories of documents it has yet to produce so they can determine what additional discovery is required in the remaining weeks of document discovery.

- Order requiring Amplify to engage in meet and confer discussion with the BEIJING and Dordellas Parties during the week of September 19 to respond to questions regarding employees involved in the operations and oversight of Amplify's platforms, shoreside and related offsite locations so that they can ensure employees likely to have relevant, responsive information have been identified and included as custodians.

### B. Status of BEIJING Parties' Discovery

Class Plaintiffs and Amplify's description of the BEIJING Parties' discovery to date is misleading and the orders they request the SMP impose are inappropriate and unnecessary.

As Class Plaintiffs and Amplify correctly point out, the BEIJING Parties have been participating in discovery as ordered by the SMP, despite their pending motions to dismiss for lack of personal jurisdiction, since just mid-July 2022. Since that time they have produced approximately 8,000 documents, not the approximately 800 claimed by Class Plaintiffs and Amplify.[2] The BEIJING Parties have collected and are reviewing and producing documents from 34 custodians (as compared to Amplify's current 23) despite the fact that Amplify refused to negotiate search terms from July through mid-August with respect to its First Requests for Production and only served its Second Requests for Production in late July with responses and objections due just two weeks ago. Class Plaintiffs served their *first* set of requests on Capetanissa in the Limitation Action (94 requests total) *just last week*. Put simply, the BEIJING Parties are where they are with respect to document production because document discovery has only recently begun with respect to them. Despite this, the BEIJING Parties have agreed to an October 21, 2022 substantial completion date—the *same* date that Amplify has committed to substantial completion despite the fact that it has been participating in discovery for *ten months*.

### C. Status of Dordellas Parties' Discovery

Over the past five weeks the Dordellas Parties have produced four production volumes, including 949 documents last week, and anticipate producing an additional 800+ documents this week. The Dordellas Parties have willingly prioritized

---

[2] The BEIJING Parties produced 7,000 documents as part of jurisdictional discovery in July 2022, but many of those documents are also responsive to merits discovery.

production of email from the time of the weather event in January 2021 and the surrounding time period in response to Amplify's request to do so. The Dordellas Parties also continue to negotiate search terms with Amplify and are providing updated hit reports on a continuing basis.

With respect to other issues raised by Amplify, (1) a backup of the satellite email from the MSC Danit has been received and work to access the documents is beginning, (2) the Dordellas Parties will serve amended ESI disclosures this week; and (3) conversations between the former crew members and their counsel regarding document preservation and collection are ongoing.

### D. Amplify's Requested Orders Directed to the BEIJING Parties and/or Dordellas Parties are Inappropriate and Unnecessary.

Class Plaintiffs and Amplify request the SMP impose four separate orders on the BEIJING and/or Dordellas Parties. None of the orders is necessary or appropriate:

1) <u>Order requiring the BEIJING and Dordellas Parties to meet interim production deadlines selected by Amplify:</u>

With the SMP's guidance, the parties agreed to substantially complete document productions by October 21, 2022. A week later, Amplify demanded that the BEIJING and Dordellas Parties also comply with interim production dates, which it has arbitrarily selected. (*See* ECF No. 390 (Status Report) at 4.) As set forth above, the BEIJING and Dordellas Parties are undertaking extraordinary efforts to complete their productions in a fraction of the time it has taken Amplify, whose own production still is not complete. In fact, the only party that appears to be intentionally withholding production of its documents is Amplify. (*See supra* at 4; *infra* at 13–14.) There is simply no basis for Amplify's demand, and forcing the BEIJING and Dordellas Parties to focus on arbitrary interim dates in the remaining five weeks before substantial completion will only manufacture unnecessary disputes and distract the parties from completing their productions.

      2)     <u>Order requiring the BEIJING and Dordellas Parties to image and search personal cell phones:</u>

The BEIJING and Dordellas Parties do not agree with Class Plaintiffs and Amplify's premise that potentially responsive material is likely to be on former crew members' personal devices; that the BEIJING or Dordellas Parties have possession, custody or control of such devices; or that the BEIJING or Dordellas Parties are responsible or even able to secure that information. Despite this, the BEIJING Parties are in the process of interviewing each of the 22 former crew members who were on the vessel on January 25, 2021 in follow up to individual document questionnaires. The Dordellas Parties are also coordinating interviews with the former crew through the crew's counsel. One of the purposes of those interviews is to identify potentially responsive materials maintained on crew members' personal devices. To the extent there are any such materials, the BEIJING or Dordellas Parties will attempt to collect them and will identify in writing those crew members that report not having any such materials.

      3)     <u>Order requiring BEIJING Parties to identify potentially responsive ESI on former crew members' personal devices that was lost, altered or destroyed:</u>

Class Plaintiffs and Amplify also request that information as to what potentially responsive ESI may have been lost, altered or destroyed. They raise this issue for the first time in their purported "status report" and provide no basis for their demand other than that they searched their custodians' personal cell phones (they do *not* say that they imaged them). In any event, the BEIJING Parties do not believe that there is a real dispute here to be decided. The BEIJING Parties are conducting custodian interviews to identify where custodians maintain potentially responsive documents, including whether they maintain them on personal devices. To the extent potentially responsive material is identified, the they will work to collect it. The BEIJING Parties do not agree that taking images of all custodians'

personal cell phones is necessary or appropriate here, and neither Class Plaintiffs nor Amplify have explained why it is.

To date, the BEIJING Parties have not learned of the existence of potentially responsive materials on former crew members' personal devices or the loss of such material.  To the extent that the BEIJING Parties do learn that responsive material about the January 25, 2021 heavy weather event and anchor dragging was on former crew members' personal devices and has been lost, they will provide a log of that information.  As the BEIJING Parties have stated on multiple occasions, they are completing crew interviews as quickly as possible, but are constrained by former crew member availability because they are either at sea or are Philippines or Ukraine nationals who have returned to their home countries or who may be displaced due to current events.

4) <u>Order requiring the BEIJING Parties to confirm whether they have searched work cell phones of their custodians, and to do so if they have not</u>:

As stated above, the BEIJING Parties are conducting custodian interviews to identify where custodians maintain potentially responsive documents.  This includes work cell phones to the extent a custodian has such a phone.

## II.  CASE SCHEDULE

Months ago, the Court set a fast-paced but reasonable schedule to govern discovery on all non-stayed claims in *Gutierrez* and the Limitation Action.  *Limitation Action*, ECF No. 46.  In its order, the Court set fact and expert discovery deadlines and explained that "[a]s the completion of discovery approaches, the Special Master Panel [would] work with the parties to set a motion cut-off date and the Limitation Action trial." *Id.* at 2.  In response to the Special Master Panel's request, the Shipping Parties have proposed a motion cut-off date of March 30, 2023 (only one week after the scheduled close of expert discovery) and a trial date as early as April 2023, assuming that the subject segment of the Pipeline is made

10

available for inspection in a timely manner. These proposed dates would allow for a tight, but sufficient, amount of time for pretrial submissions after discovery closes.

Rather than proposing motion cut-off and trial dates, the Class Plaintiffs and Amplify have asked the Special Master Panel to vacate this Court's scheduling order and to set a schedule that is unreasonably truncated, especially for expert discovery. *See Gutierrez*, ECF No. 412 at 5. The Shipping Parties do not agree. Pushing the trial from late April 2023 by two months up to late February 2023 will unreasonably cut short expert discovery. There are no eye witnesses or other direct evidence that would show whether either of these ships struck the Pipeline or caused it damage. That assessment will have to be made by experts, who will need the benefit of documents and witness testimony produced during the non-expert discovery period. This is doubly so because there still is no permit that would allow the Pipeline to be removed from the sea floor and no schedule for its inspection.

The Class and Amplify cannot reasonably dispute that the liability trial involves complicated factual issues that require thorough fact discovery and careful review of the complete factual record by experts, including:

- Failure analysis of the Pipeline once it's removed from the sea floor, from several different scientific discipline perspectives.
- Analysis of circumstances and conditions in the location of the ships and pipeline above and below water on morning of January 25;
- The history of the Pipeline prior to the spill, as well as Amplify's inspections, knowledge of, and response to the same;
- The training and experience of each of Amplify's employees, and the functioning of the Pipeline's leak detection system;
- Analysis of circumstances and conditions above and below water on October 1 and 2, including the conduct and communications of Amplify's employees;

In sum, this is a fact- and expert-intensive case that requires a number of experts from a number of disciplines who can comprehensively assess and testify upon issues including but not limited to marine navigation, marine maintenance, pipeline maintenance, structural engineering, platform operations, and flow rates.  There is simply no reason to prevent these experts' from reviewing the entire factual record or to rush them in doing so.  And it is inappropriate to cut short the expert discovery period that allows the experts to review and respond one another's work via rebuttal reports and the parties to test one another's experts via deposition.

Because fact discovery should be substantially completed reasonably in advance of the initial expert disclosure date and because written discovery and document productions generally must precede fact depositions and physical investigations, the Shipping Parties address these issues in chronological order to illustrate why the Class Plaintiffs and Amplify's proposed schedule is completely detached from the realities of this large, complex case.[3]

---

[3] While the Shipping Parties focus on fact and expert discovery, they note that this case is still partially in the pleading stage.  For example, the Shipping Parties will need to publish supplemental notice, and the monitions period does not close until November 7.  *See Limitation Action*, ECF Nos. 19, 113.  Further, multiple motions on the pleadings—including motions that will determine who is party to this litigation—are still pending.  *See, e.g.*, *Limitation Action*, ECF Nos. 47–48; *Gutierrez*, ECF Nos. 298, 305–307, 381.  Additionally, consistent with the Court's directive that motions be noticed for hearing on October 17 (*see Gutierrez*, ECF No. 401 at 2), the Class Plaintiffs have informed the Shipping Parties that they intend to move to amend their operative complaint in *Gutierrez*; Costamare Shipping Company S.A. and V.Ships Greece Ltd. have informed Class Plaintiffs and Amplify that they intend to move to dismiss or strike for lack of personal jurisdiction and failure to state a claim; and Mediterranean Shipping Company S.r.l. has informed Amplify that it intends to move to dismiss for lack of personal jurisdiction.

| Event | Court's Schedule (Shipping Parties' Proposals in Bold) | Class-Amplify Proposed Schedule |
|---|---|---|
| Substantial production completion deadline | | Oct. 21, 2022 |
| Written fact discovery completed | Nov. 10, 2022 | Nov. 21, 2022 |
| Fact witness depositions completed | Dec. 20, 2022 | Dec. 14, 2022 |
| Initial expert reports due | Jan. 27, 2023 | Dec. 21, 2022 |
| Rebuttal expert reports due | Feb. 24, 2023 | Jan 11, 2023 |
| Expert depositions and discovery completed | March 24, 2023 | Jan 27, 2023 |
| Discovery cut-off date | | Jan 27, 2023 |
| Daubert motions due | | Feb. 3, 2023 |
| Motion cut-off date | **March 30, 2023** | Feb. 6, 2023 |
| Daubert oppositions and motions in limine due | | Feb. 10, 2023 |
| MIL oppositions and Daubert replies | | Feb 14, 2023 |
| Final pretrial conference | | Feb 21, 2023 |
| Trial begins | **April 2023 or thereafter** | Feb 28, 2023 |

First, the parties still have significant work ahead of them to complete written discovery, which closes on November 10. Notably, Amplify—who had repeatedly represented that it would substantially complete its document production responsive to the Class Plaintiffs' discovery requests (served in November of 2021 and January of 2022) by early September 2022—has recently and without justification delayed its production of these documents and now does not intend to substantially complete this production until October 21, 2022. *See Limitation Action*, ECF 111 at 11–13. Moreover, although Amplify often touts that it has produced hundreds of thousands

13

SEPTEMBER 14, 2022 JOINT STATUS REPORT BY DORDELLAS AND BEIJING PARTIES

of documents in this case, it has managed to produce relatively few from the days of the Oil Spill.  *See* Section I(A), *infra*.  Despite the Shipping Parties' request that Amplify prioritize its production going forward and the Dordellas Parties' commitment to prioritize its production of important documents from the January 25 weather event, Amplify has refused to reciprocate.  Because Amplify is apparently holding back the most important documents until the very end of its production, the Shipping Parties and their experts will need sufficient time to reasonably prepare for the corresponding fact depositions and physical inspections that in turn will form the bases of their expert reports.

Second, the parties already face a condensed fact discovery period.  The inspection of the condition of the Pipeline, as well as the location and age of any alleged damage, are indisputably central to the liability trial and the Shipping Parties' defenses.  But there is still no plan in place to permit the Shipping Parties to perform the necessary Pipeline inspections, as the SMP and Court are well aware.  Relatedly, the parties have yet to schedule a number of additional physical inspections, including of Amplify's offshore platforms and shoreside station.  These inspections will form the factual bases of numerous experts' reports and therefore should take place reasonably in advance of the initial expert disclosure date.  The Class Plaintiffs and Amplify's proposed schedule, which advances the initial expert disclosure date by five-and-a-half weeks, completely fails to account for these factors.  To the extent the Class Plaintiffs and Amplify propose that the parties continue fact discovery throughout the expert discovery period, that will lead only to the constant supplementation of expert reports, the constant supplementation of rebuttal reports in response, and the inevitable need to re-open any completed expert depositions.

Meanwhile, because the parties' will not substantially complete document productions until October 21, 2022, there are just eight weeks to complete fact depositions under the current schedule ordered by the Court.  The parties have

identified *148* prospective deponents. The Class Plaintiffs and Amplify nevertheless propose further shortening that period to seven weeks, which means that the parties would be forced to triple- or quadruple-track depositions every business day throughout that period. Under the Class Plaintiffs and Amplify's proposed schedule, the parties' experts would then be required to review dozens of deposition transcripts and to serve their expert reports in just seven days—during the week of Hanukkah and Christmas, no less. Over the next three weeks (including Christmas Day and New Years), they would be forced to prepare and submit rebuttal reports. And then the parties would have only eleven business days between the expert rebuttal report exchange and the close of expert discovery to complete dozens of expert depositions.

      The Class Plaintiffs and Amplify have offered no convincing reason to deviate from current expedited case schedule, let alone to adopt their unworkable alternative. For the reasons stated above, the Court's schedule should remain in place.

Respectfully submitted,

Dated: September 14, 2022      ARNOLD & PORTER KAYE SCHOLER LLP

By:      /s/ Jonathan W. Hughes
Jonathan W. Hughes
*Attorneys for Dordellas Parties*

Dated: September 14, 2022      COLLIER WALSH NAKAZAWA LLP

By:      /s/ Joseph A. Walsh II
Joseph A. Walsh II
*Attorneys for Dordellas Parties*

| | | |
|---|---|---|
| 1 | Dated: September 14, 2022 | PEACOCK PIPER TONG + VOSS LLP |
| 2 | | By: /s/ Albert E. Peacock III |
| 3 | | Albert E. Peacock III |
| 4 | | GLEN R. PIPER, SBN. 204023 |
| | | gpiper@peacockpiper.com |
| 5 | | DAVID A. TONG, SBN. 238971 |
| | | dtong@peacockpiper.com |
| 6 | | MARGARET STANDO, SBN. 343038 |
| 7 | | mstando@peacockpiper.com |
| | | PEACOCK PIPER TONG + VOSS LLP |
| 8 | | 100 W. Broadway, Suite 610 |
| | | Long Beach, CA  90802 |
| 9 | | Telephone:  (562) 320-8880 |
| 10 | | Facsimile:  (562) 735-3950 |
| 11 | | *Attorneys for BEIJING Parties* |
| 12 | | |
| 13 | Dated: September 14, 2022 | CRAVATH, SWAINE & MOORE LLP |
| 14 | | By: /s/ *Kevin J. Orsini* |
| 15 | | Kevin J. Orsini |
| 16 | | OMID H. NASAB (*Pro Hac Vice*) |
| | | onasab@cravath.com |
| 17 | | DAMARIS HERNANDEZ (*Pro Hac Vice* pending) |
| 18 | | dhernandez@cravath.com |
| 19 | | MICHAEL P. ADDIS (*Pro Hac Vice*) |
| | | maddis@cravath.com |
| 20 | | CRAVATH SWAINE AND MOORE LLP |
| | | 825 Eighth Avenue |
| 21 | | New York, NY 10019-7475 |
| | | Telephone:  (212) 474-1000 |
| 22 | | Facsimile:  (212) 474-3700 |
| 23 | | *Attorneys for BEIJING Parties* |

**ATTESTATION OF CONCURRENCE**

I attest that concurrence in the filing of this document has been obtained from each of the above signatories.

Dated: September 14, 2022                ARNOLD & PORTER KAYE SCHOLER LLP

                                                   By:     /s/ Jonathan W. Hughes
                                                         Jonathan W. Hughes
                                                         *Attorneys for Dordellas Parties*